IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| MINDY JOYNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:23-CV-542-KFP |
| | ) | |
| WAL-MART ASSOCIATES, INC., | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Defendants Wal-Mart Associates, Inc., and Wal-Mart Claims Services, Inc., removed this case from the Circuit Court of Dale County, Alabama, based on diversity jurisdiction under 28 U.S.C. § 1332. In response to a motion to remand by Joyner and a motion to sever and remand by Defendants, the Court severed Joyner's workers' compensation claim, remanded it to Dale County, and retained jurisdiction over her three remaining claims of outrage, invasion of privacy, and fraud.[1] *See* Docs. 1, 13, 17, and 31. Joyner then filed an Amended Complaint (Doc. 32-1) asserting only those three claims, and Defendants filed Motions to Dismiss (Docs. 35, 37) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Joyner filed responses (Docs. 41, 42), and Defendants filed replies (Docs. 43, 44). Based on the parties' filings and applicable case law, the Court

---

[1] One of the Defendants' briefs (Doc. 36) addresses a bad faith claim to the extent Joyner intended to assert one because the term "bad faith" appears throughout the Amended Complaint in describing Defendants' alleged conduct. Joyner's motion to amend the complaint, filed after her workers' compensation claim was remanded to state court, acknowledges that this Court retained jurisdiction over only three claims (outrage, invasion of privacy, and fraud) and states that "no new claims are asserted" in the proposed amended complaint. Doc. 32 ¶¶ 4, 11.

finds that Defendants' motions are due to be GRANTED and the Amended Complaint is due to be DISMISSED for failure to state a claim on which relief can be granted.

## I.     JURISDICTION AND VENUE

The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because it is an action between citizens of different states and the amount in controversy exceeds $75,000. *See* Doc. 31. Personal jurisdiction is not contested, and the Court concludes that venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

## II.    STANDARD OF REVIEW

When evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must take the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff. *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321–22 (11th Cir. 2012). To survive Rule 12(b)(6) scrutiny, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under Rule 8 of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and each factual allegation should be "simple, concise, and direct." Fed. R. Civ. P. 8(a)(2) & (d)(1). To "'state a claim to relief that is plausible on its face[,]'" a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 570).[2]

## III.    FACTUAL ALLEGATIONS

### A.    The Amended Complaint

Joyner's Amended Complaint[3] asserts that she worked for Wal-Mart Associates when, as a pedestrian, she was hit by a vehicle in the parking lot on December 21, 2022, while trying to obtain the tag of someone suspected of shoplifting. Doc. 32-1 ¶¶ 2, 10, 12. Wal-Mart Claims handled her workers' compensation claim, and Norma Slayton was the case manager assigned to the claim. *Id*. ¶ 7.

To support her outrage claim, Joyner alleges her supervisor, Brandon Brock, refused to send her for emergent medical care the day she was injured. *Id*. ¶ 9. Five days later on December 26, she "was forced to seek her own emergent care after delays and refusal by agent of Defendant Wal-Mart Associates, Inc., Brandon Brock, and others." *Id*. ¶ 10. The

---

[2] Although this case was removed from state court, federal procedural rules apply, and a plaintiff must comply with federal pleading requirements. *Hollis v. Fla. State Univ.*, 259 F.3d 1295, 1299 (11th Cir. 2001) (noting that removed actions become subject to federal rather than state procedural rules); *see also Jaggars v. City of Sheffield, Ala.*, No. 3:14-CV-158-TMP, 2014 WL 2123210, at *3 n.4 (N.D. Ala. May 21, 2014) ("federal pleading standards, including Twombly/Iqbal, apply to removed complaints"); *Robinson v. Corr. Med. Assocs., Inc.*, No. 1:09-CV-01509-JOF, 2010 WL 2499994, at *5 (N.D. Ga. June 15, 2010) (recognizing federal rules apply to cases removed from state court and that Twombly/Iqbal standards apply). While the Court acknowledges that these latter cases are nonbinding, the Court finds them persuasive.

[3] Joyner's Amended Complaint is not a short and plain statement of her claims. While it does not technically fall within the definition of a shotgun pleading, Joyner has reasserted many allegations in each count, and dissecting the pleading to find factual allegations and determine which of those factual allegations support her claims has been no easy task. In describing her outrage claim, she alleges misrepresentations and suppressions of fact and intrusions into her personal seclusion, and she repeats much of the language from her outrage claim when describing her invasion of privacy claim. Additionally, many of her statements are conclusory in nature with no factual support, and this language is repeated within each count. Joyner's conclusory statements are not taken as true and have not been included in the Court's factual recitation. *Iqbal*, 556 U.S. at 678 (stating courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

Amended Complaint alleges that Joyner's shoulder, neck, back, and body were injured, but it includes no specific details about the nature or extent of her injuries except that her shoulder injury was diagnosed as a torn labrum. *Id*. ¶¶ 11, 24.

Joyner further alleges that she requested a panel of four physicians, but Defendants refused to provide one. *Id*. ¶ 12. Defendants also misrepresented to Drs. Maddox and Guin, her treating physicians, that Joyner was "refusing" treatment and requested that these doctors "alter the medical records to note that [she] was refusing care." *Id*. ¶ 13. Before doing so, Defendants "noted in writing that they had received a request for a panel [of four] on May 8, 2023," and indicated one would be provided. *Id*. ¶ 14. Finally, Joyner alleges that Defendants wrongfully terminated her temporary workers' compensation benefits and that Brandon Brock asked to borrow $3,527.61, failed to repay her, and did so as an agent of Defendants to "deliberately place [her] in financial peril."[4] *Id*. ¶¶ 15, 20.

For her invasion-of-privacy claim, Joyner re-alleges the above statements about delaying or denying care, limiting the scope of treatment, and refusing to provide a panel of four, and she claims this conduct invaded her personal seclusion. *Id*. at 6–9. She also contends the alleged misrepresentation to Drs. Guin and Maddox about her refusal of

---

[4] As part of her outrage claim, Joyner also asserts Defendants failed to follow the recommendations of her authorized physicians at Statmed, but she fails to identify any specific recommendations. Doc. 32-1 ¶ 11. The only "recommendation" referenced in the Amended Complaint is a *referral* to orthopedic care for her neck, shoulder, back, and "body as a whole" stemming from her initial visit following the injury. *Id*. Joyner also claims Defendants limited the scope of treatment by both Drs. Guin and Maddox, but she fails to describe how the treatment was limited. *Id*. Later under the invasion-of-privacy count, Joyner alleges Defendants limited the scope of Dr. Guin by allowing him to treat only her shoulder and refusing to honor the orthopedic referral for her back injuries. *Id*. at ¶ 24. However, as explained below, Dr. Maddox was treating Joyner's back (*see* Doc. 1-1 at 154), and Plaintiff does not dispute that she was receiving treatment from Dr. Maddox. Thus, Joyner's contentions are vague and confusing and fail to provide sufficient factual content of her allegations against Defendants with respect to following the recommendations of her doctors and limiting the scope of their treatment.

treatment, the alteration of her medical records, the refusal by Brock to repay his loan, and the termination of her health insurance and temporary benefits "pried, invaded, and intruded upon [her] personal seclusion. *Id.* ¶ 26; *id* at 8, ¶¶ 20–21.[5]

Finally, to support her fraud claim, Joyner points to the May 8 email where Slayton indicated that a panel of four physicians would be provided, and she asserts Slayton made this statement with an intent to deceive. *Id.* at 10, ¶ 24. She claims Slayton then misrepresented on May 24 that a functional capacity evaluation (FCE) ordered by Dr. Maddox "can be cancelled" if Joyner "wish(ed) to replace Dr. Maddox with another physician." *Id.* at 10, ¶ 25. Joyner alleges she relied on Slayton's statements, thinking she did not have to attend the FCE, and was not aware of any other scheduled treatment. *Id.* at 10, ¶ 27. Finally, she contends Slayton never cancelled the FCE, scheduled a June 5 appointment with Dr. Guin, and suppressed these facts. *Id.* at 10–11, ¶ 28.

## B.    Documents Incorporated by Reference

While a district court considering a motion to dismiss is generally limited to the four corners of a complaint, a court may also consider documents incorporated into the complaint by reference and matters of which it can take judicial notice. *Baker v. City of Madison, Ala.*, 67 F.4th 1268, 1276 (11th Cir. 2023) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). If such a document contains "'ambiguities . . . subject to interpretation,' courts should interpret all ambiguities in the plaintiff's favor." *Edwards v. Dothan City Sch.*, 82 F.4th 1306, 1311 (11th Cir. 2023) (quoting *Baker*, 67

---

[5] The paragraphs in the Amended Complaint are numbered from 1 through 29, but on Page 8 the numbering starts over with Paragraph 20. For citations to Page 8 and beyond, the Court has cited to the paragraph numbers used by Joyner but has also included the page number.

F.4th at 1277). A document is incorporated by reference when (1) the plaintiff mentions the documents at issue in the complaint; (2) the document is central to the claim; and (3) the contents are not in dispute, *i.e.*, the document's authenticity is unquestioned. *Edwards*, 82 F.4th at 1311 (citing *Baker*, 67 F.4th at 1276). Here, the communications from Slayton, an email dated May 8 and a letter dated May 24, are referenced in the Amended Complaint, both are central to Joyner's claim because the statements in the documents form the basis of her claims, and there is no dispute as to their authenticity.[6] *See* Doc. 32-1 at 4, 10.

The May 8 email from Slayton states, "I will be getting you a panel of four, as soon as I receive it I will send the doctor to you." Doc. 1-1 at 164. Slayton's May 24 letter confirms that Wal-Mart Claims received Joyner's request for a panel of four doctors to replace Dr. Guin and a panel of four doctors to replace Dr. Maddox. *Id*. at 165. In it Slayton explains that Alabama law provides that only one panel of four may be requested, and Joyner must choose a panel to replace either Dr. Maddox or Dr. Guin. *Id*. The letter informs Joyner that Dr. Maddox scheduled an FCE for May 31, and it goes on to state as follows:

> If you wish to continue your treatment with Dr. Maddox, you will need to attend that appointment and undergo the FCE before you return to see Dr. Maddox. If you wish to replace Dr. Maddox with another doctor, then a panel of four orthopaedic back doctors will be provided to you and the FCE can be cancelled.

> If you wish to continue[] treatment with Dr. Maddox and replace Dr. Guin with a panel of four, please let me know and a panel of four orthopaedic shoulder doctors will be provided to you. If you choose to replace Dr. Maddox as the authorized treating physician for your back, then Dr. Guin will continue to be the authorized treating physician for your shoulder . . . .

---

[6] Joyner filed these documents in state court as evidentiary support for a summary judgment motion. Doc. 1-1 at 146–66.

I look forward to receiving your response as to how you would like to proceed.

*Id*. at 165–66.

## IV.     DISCUSSION

### A.     Outrage Claim

The "tort of outrage is an extremely limited cause of action." *Avendano v. Shaw*, 371 So. 3d 278, 286 (Ala. 2022) (citing *Potts v. Hayes*, 771 So. 2d 462, 465 (Ala. 2000)). Under Alabama law, an "outrage claim can proceed past the motion-to-dismiss stage if the complaint alleges conduct 'so extreme in degree as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized society.'" *Id*. (citing *Wilson v. Univ. of Ala. Health Servs. Found., P.C.*, 266 So. 3d 674, 677 (Ala. 2017) and *American Rd. Serv. Co. v. Inmon*, 394 So. 2d 361, 364-65 (Ala. 1980) (noting that tort of outrage "does not recognize recovery for 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities'") (additional citations omitted)). To satisfy this "rigorous" standard, a plaintiff must plausibly allege a defendant's conduct (1) was intentional or reckless, (2) was extreme and outrageous, and (3) caused severe emotional distress that a reasonable person could not be expected to endure. *Id*. (citing *Inmon*, 394 So. 2d at 364–65).

In *Garvin v. Shewbart*, 564 So. 2d 428 (Ala. 1990), a plaintiff who injured her back at work asserted an outrage claim against her workers' compensation insurer. The plaintiff had already undergone two back surgeries but sought a second opinion when her surgeon recommended a third operation. *Id*. at 429. The insurer refused to pay for treatment by that second doctor, insisting instead on its right under Ala. Code § 25–5–77 to select the

physician who would provide a second opinion. *Id*. The insurer referred the plaintiff to a different specialist, but he refused to see the plaintiff until he could obtain her medical records, which the insurer had promised to send. *Id*. at 429–30. A year passed, and the plaintiff still had been unable to see the doctor. *Id*. at 430. After an additional three months, the insurer selected another physician, but the plaintiff learned at her appointment that he did not perform back surgery. *Id*. Also, at some point, the insurer stopped paying for plaintiff's prescription medications. *Id*. After further attempts to obtain authorized treatment, plaintiff filed a lawsuit against the insurer. The Alabama Supreme Court upheld summary judgment for the insurer on the outrage claim, as follows:

> The tort of outrage encompasses only "conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *American Road Serv. Co. v. Inmon,* 394 So. 2d 361, 365 (Ala. 1980). See also *Busby v. Truswal Systems Corp.,* 551 So. 2d 322 (Ala. 1989); *National Security Fire & Casualty Co. v. Bowen,* 447 So. 2d 133 (Ala. 1983). None of the alleged conduct meets this test. CNA was doing "no more than [insisting] upon [its] legal rights in a permissible way," *Inmon,* at 368 (citation omitted), for which it cannot be held liable in an action based on outrage.

*Id.* at 431. Thus, even though the insurer refused to allow the plaintiff to choose her own physician for a second opinion, contributed to a year-long delay in seeing the physician selected by the insurer by failing to send plaintiff's medical records, and caused further delay by finding another physician who could not provide the requested second opinion, its conduct did not rise to the level of outrage.

Defendants and Plaintiff both cite *Cont'l Cas. Ins. Co. v. McDonald*, 567 So. 2d 1208, 1220 (Ala. 1990) and *Travelers Indem. Co. of Illinois v. Griner*, 809 So. 2d 808, 811–12 (Ala. 2001) to support their respective arguments on the outrage claim. In

*McDonald*, the Alabama Supreme Court upheld a jury verdict on an outrage claim in favor of a plaintiff who contended the insurer intentionally mishandled his claim as a means of coercing him into settling for a small lump sum. The plaintiff argued the insurer delayed payments to doctors, hospitals, and pharmacists for unreasonable lengths of time, causing a hospital to threaten collection actions against him and a pharmacy to refuse to provide further pain medication. *Id*. at 1210. The insurer also resisted paying for a hot tub or whirlpool bath prescribed by the plaintiff's doctor, suggesting instead a membership in a health spa or other in-home alternatives. *Id*.

In upholding the verdict, the *McDonald* court distinguished the case from *Garvin*, *supra*, noting that McDonald's need for pain treatment was an immediate, day-to-day need, while Garvin's possible need for a third surgery was not. *Id*. at 1220. Moreover, there was "pervasive evidence" that McDonald's pain was unusually severe, causing him to be especially subject to emotional distress over the availability of treatment, and the insurer engaged in repeated conduct that brought the availability of that treatment into doubt. *Id*. Additionally, the insurer's handling of McDonald's claims occurred over five years or more, while Garvin experienced no delays until sometime during the two-year period when she was seeking a second opinion. *Id*. Most significantly, McDonald produced evidence from the insurer's own files demonstrating that its goal in dealing with him was to persuade him to settle for a small lump-sum benefit. *Id*.

Similarly, in *Travelers Indemnity Co. of Illinois v. Griner,* 809 So. 2d 808, 811 (Ala. 2001), the workers' compensation insurer withheld benefits authorized by the plaintiff's physicians without justification for approximately five years. The plaintiff's injury was

"substantial" and required "extensive medical treatment," including a spinal fusion. *Id*. at 809. His treating physicians ordered a psychiatric evaluation along with a hospital bed because he could not sleep in a regular bed and a whirlpool tub because he had lower back pain and significant pain and swelling in his legs and feet. *Id*. at 811. The insurer would not pay for this treatment despite having no information indicating the treatment was unreasonable and unnecessary. *Id*. The court affirmed the jury's verdict in favor of the plaintiff, finding the insurer had "forced [the plaintiff] to suffer increased pain, sleep deprivation, and clinical depression for five years" even though treatment had been authorized and was covered under the workers' compensation policy. *Id*. at 812.

Joyner contends her case is on all fours with *McDonald* because the defendants in that case carried out an "action plan" to pressure the employee, who was known to be in constant pain, into settling by systematically delaying payments for medical treatment. Doc. 41 at 12. She makes a similar comparison to *Griner*, stating the defendant in that case "systematically and arbitrarily denied an employee treatment that was prescribed by three authorized physicians to coerce him to agree to a minimum settlement." *Id*. at 13. However, Joyner has asserted no factual content supporting a plausible inference that the Wal-Mart Defendants had an "action plan" to coerce her into a small settlement or that they engaged in arbitrary denials of treatment or systematic delays in payments or treatments to achieve that plan during the five to six months of adjusting her claim. She also has not alleged facts suggesting that she was in "unusually severe" pain or that her injuries were "substantial" and required "extensive medical treatment."

Taking Joyner's factual allegations as true and construing any ambiguities in Slayton's communications in her favor, Defendants failed to send Joyner to emergent care when she was injured at work on December 21, 2022, and instead made a later appointment for non-emergent care. After five days, Joyner sought emergent care on her own. She was seen at Statmed, where a doctor referred her to orthopedic care for her neck, shoulder, back, and body injuries. The Amended Complaint identifies one of her injuries as a torn labrum in her shoulder, but it contains no other specific details about any of her injuries. Joyner began treatment with Dr. Guin for the torn labrum and with Dr. Maddox for the unspecified back injury, but she became dissatisfied with both of these doctors and requested a panel of four physicians "to choose from for her shoulder, neck[,] and lumbar injury." Doc. 32-1 ¶ 13.

In the May 8 email, Slayton told Joyner a panel of four physicians would be provided. In the May 24 letter, Slayton acknowledged Joyner's request for panels of four to replace both of her doctors and explained that Alabama law permitted only one panel of four, so Joyner would have to choose whether to replace Dr. Maddox or Dr. Guin. In the Amended Complaint, Joyner claims Slayton told her she did not have to attend the May 31 FCE with Dr. Maddox because she was getting a panel of four, but Slayton's May 24 letter is unambiguous on this point. It informed Joyner that she must attend the May 31 FCE if she wanted to continue treatment with Dr. Maddox and that it would be cancelled only if Slayton decided she wanted to replace Dr. Maddox. Doc. 1-1 at 165–66.

Joyner also claims Slayton caused Joyner's medical records to be "altered" to reflect she was refusing treatment. It is undisputed that Joyner did not attend the FCE, and she has

not alleged that she ever told Slayton she wanted to replace Dr. Maddox, the event that would have triggered cancellation of the FCE. Viewing these facts in Joyner's favor, the failure to attend the FCE was regarded by Slayton as a refusal of treatment. Finally, Joyner asserts that Slayton scheduled a June 5 appointment with Dr. Guin, failed to tell Joyner about it, and then terminated her workers' compensation benefits when Joyner missed the FCE and June 5 appointment. Doc. 32-1 at 10, ¶¶ 28–31.

As in *Garvin,* where the insurer insisted on choosing the physician to provide a second opinion and caused an extended delay of a third back surgery by failing to provide medical records and sending the plaintiff to a doctor who did not perform back surgery, the conduct alleged above does not meet the rigorous standard required for the "extremely limited" tort of outrage. Joyner's allegations do not come close to the insurers' conduct in *McDonald* or *Griner*. Although stated in the context of whether the exclusivity provision of Alabama Workers' Compensation Act bars intentional tort claims, the following concern described by the Alabama Supreme Court is persuasive here:

> It seems clear that a compensation claimant cannot transform a simple delay in payments into an actionable tort by merely invoking the magic words "fraudulent, deceitful and intentional" or "intentional infliction of emotional distress" or "outrageous" conduct in his complaint. The temptation to shatter the exclusiveness principle by reaching for the tort weapon whenever there is a delay in payments or a termination of treatment is all too obvious, and awareness of this possibility has undoubtedly been one reason for the reluctance of courts to recognize this tort except in cases of egregious cruelty or venality.

*Lowman v. Piedmont Exec. Shirt Mfg. Co.*, 547 So. 2d 90, 94 (Ala. 1989) (citations omitted). In the Amended Complaint, disregarding Joyner's conclusory statements and recitations of the elements of her claim, the factual allegations describe conduct that was,

at most, annoying, inconvenient, frustrating, or confusing, but it was not "egregious cruelty or venality" or conduct "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society."[7] Therefore, the Court finds the Amended Complaint fails to state a claim for outrage.

## B.     Invasion-of-Privacy Claim

In stating a claim for invasion of privacy, a plaintiff may show one of the following: (1) intrusion into the plaintiff's physical solitude or seclusion; (2) giving publicity to private information about the plaintiff that violates ordinary decency; (3) putting the plaintiff in a false but not necessarily defamatory position in the public eye; or (4) appropriating some element of the plaintiff's personality for a commercial use. *Johnston v. Fuller*, 706 So. 2d 700, 701 (Ala. 1997); *Lawrence v. Christian Mission Ctr., Inc.*, 780 F. Supp. 2d 1209, 1217 (M.D. Ala. 2011). In the Amended Complaint and in her responses to

---

[7] *Inmon*, 394 So. 2d at 365, 367–68 (plaintiff's allegations that he was "harassed, investigated without cause, humiliated, accused of improper dealings, treated uncustomarily, and terminated without justification" held insufficient because, although record supported conclusion that investigation and employee's termination "may have been somewhat disorganized and a humiliating experience," they did not rise to the level of outrage) (citation omitted); *see Potts v. Hayes,* 771 So. 2d 462, 465 (Ala. 2000) (holding as insufficient for outrage claim plaintiff-nurse's allegations that supervisor sent letter to Alabama Board of Nursing documenting concerns about her regularly seeking narcotics for migraines, receiving narcotics without a doctor's order, and checking out narcotics as a part of her job without proper documentation, thereby publicly accusing her of "being a drug addict, a thief, a danger to the public and of failing to perform her duties"); *Thomas v. Williams*, 21 So. 3d 1234, 1238–40 (Ala. Civ. App. 2008) (allegations that defendant contacted plaintiff's employer, plaintiff was terminated shortly thereafter, defendant intended to cause the termination, defendant did improperly cause termination, and plaintiff was subjected to severe emotional distress insufficient to survive motion to dismiss because, even if taken as true, facts were insufficient for outrage); *Collins v. Henderson,* 480 So. 2d 1246, 1248 (Ala. Civ. App. 1985) (affirming dismissal of homeowner's outrage claim based on allegations that contractor caused tar damage to home and household furnishings, caused walls to crack, caused house to leak, resulting in water damage to home and furnishings, cut and then improperly repaired power cable outside the home, causing balls of electricity to fly through her home).

Defendants' motions, Joyner contends only that Defendants intruded into her personal seclusion.

As mentioned above, Joyner's repetition of facts and conclusory assertions within each claim makes it difficult to discern which facts are meant to support invasion of privacy. The Amended Complaint contends Slayton "wrongfully intruded upon [her] personal seclusion" by denying medical treatment, limiting the scope of care, providing false information to and suppressing information from Drs. Maddox and Guin, failing to provide a panel of four physicians, and denying reasonable and necessary care. Doc. 32-1 at 7–8 ¶ 27. She further asserts the denial of temporary workers' compensation benefits with "pretextual motives," termination of her health insurance, refusal by Brock to repay his loan, and alteration of her medical records were all done to pry, interfere with, and intrude upon her personal seclusion. *Id*. at 8, ¶ 20.

Alabama law defines invasion of privacy as the "intentional wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation." *Carter v. Innisfree Hotel, Inc.*, 661 So. 2d 1174, 1178 (Ala. 1995) (citations omitted). The tort includes intrusion upon a physical space and invasion of a person's "emotional sanctum." *Id*. (citations omitted). However, the Alabama Supreme Court has stated as follows with respect to personal intrusion claims:

> The "wrongful intrusion" prong of the tort of invasion of privacy has been defined as the "intentional interference with another's interest in solitude or seclusion, either as to his person or to his private affairs or concerns." W. Prosser & W. Keeton, *The Law of Torts,* p. 851 (5th ed. 1984). "[T]here must be something in the nature of prying or intrusion" and "the intrusion must be something which would be offensive or objectionable to a reasonable person. The thing into which there is intrusion or prying must be, and be entitled to be, private." *Id.* at 855.

*Busby v. Truswal Sys. Corp.*, 551 So. 2d 322, 323–24 (Ala. 1989); *see also Hughes v. Wal-Mart Stores, E. LP.*, No. 2:17-CV-225-WKW-TFM, 2018 WL 3352974, at *5 (M.D. Ala. June 12, 2018), *report and recommendation adopted as modified,* No. 2:17-CV-225-WKW, 2018 WL 3352652 (M.D. Ala. July 9, 2018) (after noting plaintiff must allege facts showing intrusion was offensive and information disseminated was private, finding plaintiff stated invasion-of-privacy claim based on personal intrusion by alleging defendant discussed her unfitness with coworker in front of customers and discussed her health information with coworkers) (citing *Busby*, 551 So. 2d at 323).

Joyner's factual allegations are insufficient to describe an offensive intrusion or prying that would be offensive or objectionable to a reasonable person. The allegations include delaying medical treatment by making an appointment for non-emergent care, selecting two different doctors for treatment of Joyner's shoulder and back injuries, refusing to provide two panels of four physicians, refusing to provide even one panel of four until Joyner decided which physician to replace, causing a missed appointment to be documented as a refusal of treatment, and terminating benefits after two missed appointments. None of this alleged conduct describes an offensive intrusion or prying into something "entitled to be[] private." *Busby*, 551 So. 2d at 324 (discussing the tort in the context of marital and sexual concerns, which the United States Court has recognizing as fundamental rights entitled to protection).

Slayton was Joyner's workers' compensation claim case manager. She was not prying into a matter Joyner was entitled to keep private; she was adjusting Joyner's claim. It is clear from the Amended Complaint and the correspondence referenced above that

Joyner expected to communicate with Slayton about the details of her medical treatment and that Slayton's role included coordinating Joyner's treatment and corresponding with Joyner and her physicians about that treatment. No factual content in the Amended Complaint suggests Joyner was entitled to keep the scheduling details of her treatment private from the workers' compensation insurer or her physicians, and Joyner has cited no case holding that similar conduct constitutes invasion of privacy under Alabama law.[8] Because the Court determines no reasonable inference can be drawn to find that the conduct alleged in the Amended Complaint was an offensive or objectionable prying into Joyner's private affairs or personal seclusion, this claim is due to be dismissed for failure to state a claim on which relief can be granted.

## C.    Fraud Claim

### 1.    Fraudulent Misrepresentation

The elements of a fraudulent misrepresentation claim in Alabama include (1) a misrepresentation of material fact (2) made willfully to deceive, recklessly, without knowledge, or mistakenly, (3) which was reasonably relied on by the plaintiff under the circumstances and (4) caused damage as a proximate consequence. *Ala. River Grp., Inc. v. Conecuh Timber, Inc.*, 261 So. 3d 226, 242 (Ala. 2017) (citing *Bryant Bank v. Talmage Kirkland & Co.*, 155 So. 3d 231, 238 (Ala. 2014) (additional citations omitted)); *see* Ala.

---

[8] In *Busby, supra,* the plaintiffs alleged they had been subjected to sexual harassment, and, in reviewing summary judgment, the court stated that a jury could reasonably determine the conduct "intruded into the plaintiffs' sex lives in an offensive or objectionable manner and thereby invaded their right of privacy." *Id.* at 324. Similarly, in *Jones v. Colonial BancGroup*, 735 So. 2d 1163, 1165 (Ala. Civ. App. 1998), one of the plaintiffs alleged verbal and physical harassment. In each of these cases, the issue was whether the invasion-of-privacy claim was barred by the exclusivity provisions of Alabama's workers' compensation act, and neither case involved conduct performed in the normal course of adjusting a workers' compensation claim.

Code § 6–5–101 (1975). Joyner bases her fraud claim on Slayton's May 8 email, which Joyner describes as a misrepresentation that she would be provided with a panel of four physicians, and the May 24 letter, which Joyner claims misrepresented that, "if [Joyner] 'wish(ed) to replace Dr. Maddox with another physician, [then] a panel of four (4) orthopedic doctors will be provided . . . and the FCE can be cancelled." Doc. 32-1 at 10, ¶¶ 24–25. Joyner asserts Slayton had intent to deceive when she made these "direct statements" that a panel of four would be provided and there was no need to attend the FCE. *Id*. at 10 ¶ 25.

Again, the Court cannot credit Joyner's characterization of these statements. Slayton's May 8 email did state that she would be "getting [Joyner] a panel of four" and that Slayton would "send the doctor" when she received it, but it did not state Joyner would get more than one panel of four or that Joyner would be allowed to replace more than one doctor. The May 24 letter informed Joyner she could have only one panel of four, not two; the FCE would be cancelled if Joyner wanted to replace Dr. Maddox; Joyner must attend the FCE if she did not want to replace Dr. Maddox; and Slayton "look[ed] forward to receiving [Joyner's] response as to how [she] would like to proceed." Doc. 1-1 at 165. Joyner does not dispute that she was entitled to only one panel of four, and, notably, she does not allege that she ever responded to Slayton's letter to make the selection as to which doctor a panel was requested.

Yet Joyner asserts Slayton's statements put her "under the reasonable belief" that a panel of four physicians was going to be provided and that she would not be continuing treatment with *either Dr. Maddox or Dr. Guin*. Doc. 32-1 at 11, ¶ 32 (emphasis added).

Such a belief was not reasonable. Slayton's statements were unambiguous and subject to only one interpretation—that one panel of four physicians would be provided after Joyner communicated her decision about which doctor to replace, the FCE would be cancelled only if Joyner chose to replace Dr. Maddox, and Joyner would continue her treatment with the doctor she chose not to replace. Thus, Joyner has failed to establish a misrepresentation of a material fact. Although the Court must accept the allegations in a complaint as true at the motion-to-dismiss stage, as explained above, the Court is not required to accept a plaintiff's mischaracterizations of unambiguous statements in determining whether Joyner has stated a fraud claim under Rule 12(b)(6). Considering Joyner's allegations and the statements in Slayton's May 8 and May 24 communications incorporated by reference into the Amended Complaint, the facts alleged do not allow the Court to draw a reasonable inference that Defendants are liable for fraud. Accordingly, Joyner has failed to state a claim for fraudulent misrepresentation that is plausible on its face.[9]

### 2.    Fraudulent Suppression

This leaves the Court with one final allegation to consider: Joyner alleges Slayton "continued to fraudulently suppress information and with deceit and motive scheduled a

---

[9] In describing her fraud claim, Joyner also alleges Slayton failed to advise Drs. Maddox and Guin that a panel of four would be provided, misrepresented to them that Joyner was refusing medical care, and knew Drs. Maddox and Guin would rely on these misrepresentations. Doc. 32-2 at 11 ¶¶ 29–30. The Court will not address these allegations because Joyner does not claim *she* relied on these alleged misrepresentations. *See Bennett v. CIT Bank, N.A.*, No. 2:18-CV-852-KOB, 2019 WL 339175, at *6 (N.D. Ala. Jan. 28, 2019) (dismissing fraud claim because plaintiffs did not allege they relied on misrepresentation made to another party and recognizing that, although Alabama law allows a fraud claim based on a representation to a third party "in certain limited circumstances," it still requires a plaintiff to establish his or her own reliance on that misrepresentation) (citing *Delta Health Grp., Inc. v. Stafford*, 887 So. 2d 887, 899 (Ala. 2004), *Chase v. Kawasaki Motors Corp., U.S.A.*, 140 F. Supp. 2d 1280, 1293 (M.D. Ala. 2001), and *Ex parte DaimlerChrysler Corp.*, 952 So. 2d 1082, 1091 (Ala. 2006)).

June 5, 2023 appointment with Dr. Guin and never cancelled the FCE on May 31, 2023." Doc. 32-1 at 10–11, ¶ 28.[10] The elements of a fraudulent suppression claim in Alabama are that (1) the defendant had a duty to disclose an existing material fact; (2) the defendant suppressed that existing material fact; (3) the defendant had actual knowledge of the fact; (4) the defendant's suppression of the fact induced the plaintiff to act or to refrain from acting; and (5) the plaintiff suffered actual damage as a proximate result. *J.G. Rogers Corp. v. Metallized Carbon Corp.*, No. 2:18-CV-1955-RDP, 2019 WL 1597845, at *5 (N.D. Ala. Apr. 15, 2019) (quoting *Johnson v. Sorensen*, 914 So. 2d 830, 837 (Ala. 2005) (quotation marks omitted)). Additionally, a plaintiff must plead fraudulent suppression with particularity. *Id.* (citing Fed. R. Civ. P. 9(b) and *DGB, LLC v. Hinds*, 55 So. 3d 218, 231 (Ala. 2010)).

With respect to the cancellation of the FCE, as the Court has already explained, Slayton did not represent to Joyner that the FCE was being cancelled and that she did not have to attend. Therefore, the fact that it remained scheduled was never concealed and cannot form the basis of a suppression claim.

---

[10] In her response to Defendants' Motion to Dismiss, Joyner states that she has sufficiently pleaded that "agents of defendant fraudulently suppressed the fact that defendant's [sic] planned to terminate her workers compensation file and refuse further care and benefits if she did not attend the FCE." Doc. 42 at 22. She cites generally to the Amended Complaint, but there is no such allegation in the Amended Complaint. A plaintiff cannot amend a complaint with assertions in a response to a motion to dismiss. *Burgess v. Religious Tech. Ctr., Inc.*, 600 F. App'x 657, 665 (11th Cir. 2015) ("We repeatedly have held that plaintiffs cannot amend their complaint through a response to a motion to dismiss.") (citing *Rosenberg v. Gould*, 554 F. 3d 962, 967 (11th Cir. 2009) (confirming that request for leave to amend cannot be included in a footnote in a memo opposing a motion to dismiss). The Court also notes that Joyner requested and was granted leave to amend "to comply with the federal rules of pleading." Doc. 32 ¶¶ 6–7, Doc. 33. Therefore, the only alleged suppressions for the Court to consider are Slayton's noncancellation of the FCE and her nondisclosure of the June 5 appointment with Dr. Guin.

With respect to the June 5 appointment, the Court accepts as true that Slayton was the case manager assigned to Joyner's workers compensation claim, that she scheduled a June 5 appointment with Dr. Guin, and that she failed to notify Joyner of the appointment. It also accepts as true that Slayton interpreted this missed appointment as a refusal of treatment and terminated Joyner's workers' compensation benefits. But these assertions fail to allege with particularity the fourth element above: how Slayton's alleged suppression of the June 5 appointment induced her to refrain from acting. In one line of the Amended Complaint, Joyner states that "she was not aware of any other scheduled treatment." Doc. 32-1 at 10, ¶ 27. However, she pleads no facts showing she reasonably relied on Slayton's silence or that her lack of knowledge about the appointment induced her not to attend.

> Under the fourth element, "a plaintiff's 'reasonable reliance' is an essential element of a suppression claim." *Johnson*, 914 So. 2d at 837 (brackets omitted). Here, [the plaintiff] has merely made the conclusory allegation that it "relied on" [the defendant] to provide a full accounting of all payments received from its customers. . . . It has not explained with particularity *how* it relied on [the defendant's] alleged suppression of those payments . . . . In other words, what [the plaintiff's] fraud claim really complains about is [the defendant's] failure to perform a contractual promise . . . . But a party cannot show fraud "merely by showing that the alleged [contractual] promise ultimately was not kept; otherwise, any breach of contract would constitute a fraud." *Goodyear Tire & Rubber Co. v. Washington*, 719 So. 2d 774, 776 (Ala. 1998).

*J.G. Rogers Corp.,* 2019 WL 1597845, at *6 (emphasis in original). Similarly, Joyner complains that her workers' compensation case manager failed to perform her duty as a case manager to inform her of a doctor's appointment. Assuming for purposes of Defendants' motions that Joyner has established the other elements of fraudulent suppression, that simple failure alone cannot constitute fraudulent suppression. The only

statements in the Amended Complaint touching on Joyner's reasonable reliance relate to Slayton's statements that a panel of four would be provided and the FCE would be cancelled. Doc. 32-1 at 10–12, ¶¶ 26, 32–34. Thus, not only does Joyner fail to allege that Slayton's silence induced her not to attend the June 5 appointment, but she also affirmatively alleges that it was Slayton's "deceitful statements" about the panel and FCE cancellation that gave her the "reasonable belief" she would not be continuing treatment with Dr. Maddox or Dr. Guin. *Id.* at 11, ¶ 32. As with the May 31 FCE, of which Joyner admits she was aware, Joyner alleges she did not attend the June 5 appointment because of Slayton's "deceitful statements," not because Slayton failed to disclose it.[11] Accordingly, because Joyner has failed to plead with particularity that Defendants' silence about the June 5 appointment induced her not to attend, her fraudulent suppression claim is due to be dismissed for failure to state a claim under Rule 12(b)(6).

---

[11] In Paragraph 33 of the Amended Complaint, Joyner states, "As a result of the intentional misrepresentations made to deceive plaintiff and intentional fraudulent suppression of material facts by Norma Slayton . . . plaintiff reasonably relied upon the deceitful statements of Norma Slayton and did not attend the scheduled appointments." Doc. 32-1 at 12. This language still falls short of the allegations necessary to save her suppression claim. The Court cannot infer that it was the suppression of the June 5 appointment that Joyner reasonably relied upon and induced her not to seek further treatment when reading Paragraph 33 with the other factual assertions in the Amended Complaint, as those allegations make clear that it was Joyner's belief that the panel of four was forthcoming and that the FCE was going to be cancelled that induced her not to attend the June 5 appointment. Joyner does not allege she would have attended the June 5 appointment if she had known about it; she pleads to the contrary—that it was Slayton's alleged deceitful statements that induced her not to act. And as explained above, the Court does not accept Joyner's characterization of Slayton's statements as a representation that she would stop treating with both doctors and that FCE would be cancelled. In federal court, "only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." *Bogus v. City of Birmingham, Alabama*, No. 2:17-CV-827-TMP, 2018 WL 1746527, at *1–2 (N.D. Ala. Apr. 11, 2018) (quoting *Iqbal*, 129 S. Ct. at 1949–50 (citation omitted) and citing *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252 (11th Cir. 2009) ("The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss," and "the well-pled allegations must nudge the claim 'across the line from conceivable to plausible'") (quoting *Iqbal* and *Twombly*)). Here, it is not plausible to make an inference that Joyner relied on Slayton's silence when other factual allegations assert to the contrary.

## V.    CONCLUSION

For the reasons stated above, it is ORDERED that Defendants' Motions to Dismiss

(Docs. 35, 37) are GRANTED and this case is DISMISSED with prejudice.

Done this 23rd day of April, 2024.


/s/ Kelly Fitzgerald Pate
KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE